IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **G.P.M., E.R.R., AND ON BEHALF OF MINORS A.R. AND D.R.**<br><br>**Plaintiffs,**<br><br>v.<br><br>**(1) ARMAN MATEO MEDINA;**<br>**(2) AIRBNB, INC.;**<br>**(3) YADIEL RODRÍGUEZ**<br>**(4) UNKNOWN DEFENDANTS;**<br>**(5) ABC INSURANCE CO.**<br><br>**Defendants.** | CIVIL NO.<br><br>Violation of Privacy;<br>Illegal Video and<br>Audio Recordings<br><br>**PLAINTIFF DEMAND**<br>**TRIAL BY JURY** |

## **COMPLAINT**

TO THE HONORABLE COURT:

COMES NOW, the Plaintiffs, Mrs. G.P.M, Mr. E.R.R.**,** and on behalf of their minor children A.R. and D.R.,[1] through their undersigned attorney and very respectfully state, allege and pray as follows:

### I.    NATURE OF THE ACTION AND JURISDICTION

1.1.    This action arises under the Federal Wiretapping Act, 18 U.S.C. § 2511 et seq; the Constitution and Laws of the Commonwealth of Puerto Rico, particularly under its Article II, Sections 1 and 8, and Article 1536 of Puerto Rico's Civil Code of 2020, 31 PR Laws sec. 10801.

---

[1] To avoid the revictimization of the Plaintiffs due to the sensitive nature of the grievances asserted herein, their full names are not disclosed in this Complaint. Their identities will be submitted separately in a motion filed under seal.

1.2     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction per the private cause of action recognized under Federal Wiretapping Act, 18 U.S.C. § 2511 et seq, which recognizes a private right of action. 18 U.S.C.A. § 2520.

1.3     Diversity Jurisdiction is also conferred upon this Court by 28 U.S.C. § 1332, insofar as plaintiffs reside in the State of Georgia and defendant Medina resides in Puerto Rico, and codefendant Airbnb has availed itself of the privilege of acting in this jurisdiction through its website; in any event, its headquarters are located in 888 Brannan Street, San Francisco, CA 94103.

1.4     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the operative facts of the Complaint occurred in this jurisdiction.

1.5     Plaintiffs demand trial by jury and request for relief set forth in the instant complaint.

## II. THE PARTIES

### A. Plaintiffs

2.1     Plaintiffs Mrs. G.P.M., Mr. E.R.R., and their minor children, A.R. and D.R., are citizens of the United States and resident of the State of Georgia. Plaintiffs suffered emotional harm as a result of codefendant Medina's intentional, malicious, and negligent invasion of their privacy through the unauthorized use of video and audio recordings, including live surveillance, perpetrated by codefendant Medina, and as a result of codefendant Airbnb's negligent conduct. These actions caused severe emotional distress and jeopardized the safety and well-being of their family.

**B. Defendants**

2.2     Defendant ARMAN MATEO MEDINA (hereinafter "Medina") is a citizen of the United States, resides in Urb. Costa Norte D-1 Calle Arrecife Hatillo, P.R. 00659. Defendant Medina is the owner and co-host of a short-term rental property listed on Airbnb, located in Hatillo, Puerto Rico. Defendant Medina surreptitiously installed hidden recording devices within the rental property and unlawfully recorded numerous guests without their knowledge or consent, including Plaintiffs and their minor children.

2.3     Defendant AIRBNB, INC. (hereinafter "Airbnb") operates a website and mobile application for short-term and long-term home rentals. Airbnb is incorporated in Delaware and headquartered in San Francisco, California. Airbnb, acted as operator and manager of the leasing property.

2.4     Defendant YADIEL RODRÍGUEZ (hereinafter "Rodríguez") is a citizen of the United States with residence in the Municipality of Hatillo, P.R. Defendant Rodríguez is the co-host of a short-term rental property listed on Airbnb, located in Hatillo, Puerto Rico. Defendant Rodríguez surreptitiously assisted codefendant Medina in the installation of hidden recording devices within the rental property and/or knew of the existed of the hidden cameras and/or assisted in the unlawful recordings of numerous guests without their knowledge or consent, including Plaintiffs and their minor children.

2.5     The identities and addresses of certain unknown defendants are presently unknown. Plaintiffs are unaware whether Defendant Medina acted alone or was aided by other individuals, nor do they know whether additional persons were involved in the dissemination of their images. Plaintiffs expressly reserve all rights to amend this

3

Complaint should further information come to light regarding the involvement of other individuals.

2.6   ABC Insurance Co., name is currently unknown, and their addresses are also currently unknown.

### III. FACTS

**A. The Booking**

3.1   On February 15, 2025, the Plaintiffs, used the Airbnb website to book Medina's apartment (the "Airbnb Apartment") located in A-15 Street No. 2, Urb. Mar Azul, Hatillo, Puerto Rico, for a trip that was to last from February 17th to February 23, 2025.

3.2   As per Airbnb policy and practice, no written agreement exists directly between Plaintiffs and the homeowners. Rather, the rental of the property was conducted entirely through Airbnb. Thus, the booking of and payment for the property was made by Plaintiffs solely through the Airbnb platform.

3.3   After booking the Airbnb Apartment, Plaintiffs were sent a booking record. The booking record did not mention that the Airbnb Apartment contained any video or audio recording equipment inside the property.

3.4   At no time did Airbnb disclose to Plaintiffs that a concealed webcam was installed (1) in the master bedroom, (2) master bedroom's bathroom and (3) the hallway's bathroom of the Airbnb Apartment, nor that such devices were active and capable of capturing video and audio recordings.

3.5   Through its platform, Airbnb offered the property as a safe vacation rental accommodation, in accordance with prevailing industry and community standards. The terms and conditions imposed by Airbnb constitute an adhesion contract, which must be

interpreted in favor of the non-drafting party. Pursuant to Article 1249 of the Puerto Rico Civil Code, any contractual provision that limits the rights or actions of the non-drafting party may be declared null and void.

**B. The Stay**

3.6     On February 17, 2025, the Plaintiffs arrived at the Airbnb Apartment and noticed that the property had two (2) entrances, one through the front that faces the inside of the neighborhood and one through the back that faces the main road. The property also had two units, one upstairs and one downstairs. They verified their email confirmation from Airbnb and noticed it did not specify which unit they will be staying in, nor did it specify which entrance should they use. Therefore, the Plaintiffs then contacted the owner, Medina, through the messaging feature. Afterwards, cohost, Yadiel Rodríguez call them and told them they were assigned to the upstairs unit, and their entrance was the one facing the main road.

3.7     The unit inside had two (2) bedrooms and two (2) bathrooms. One of the bathrooms was in the hallway and did not have a door. The other bathroom was in the master bedroom without a wall dividing the space, it was a completely open concept. The master bedroom had three (3) mirrors in the room, two on each side and one in a corner of the room.

3.8     On their fourth day, February 20, G.P.M. and the children were in the master bedroom's bathroom getting ready to go to the beach. At that moment, E.R.R. said he needed to use that bathroom and asked G.P.M. to continue getting ready in the hallway bathroom.

3.9     Upon entering the hallway bathroom, G.P.M. was looking in the mirror when she noticed an electrical outlet aligned with the mirror. She then observed a reflection coming from the outlet, and upon closer inspection, she saw a round crystal that resembled a camera lens.

3.10    G.P.M. immediately called E.R.R. and informed him about the apparent camera lens inside the outlet. E.R.R. responded that it was probably just a light reflection. G.P.M., however, insisted it was not and proceeded to check the electrical outlets in the master bedroom, where she discovered a second outlet containing what also appeared to be a camera lens. E.R.R. again dismissed her concerns, and the family then left for the beach.

3.11    A few hours later, after the Plaintiffs and the children had spent time at the beach, G.P.M. mentioned to E.R.R. that she had found information on Google about hidden cameras. She asked him to remove the electrical outlets once they returned to the property, for her peace of mind.

3.12    Upon their return, G.P.M. inspected the outlet located above the mirror in the master bedroom's bathroom and discovered an outlet containing a hidden camera about the size of a pencil point.

3.13    E.R.R. proceeded to remove the first outlet in the master bedroom. As he did, a black box wrapped in tape with a long wire attached emerged from the wall.

3.14    Plaintiffs contacted the Airbnb platform, and G.P.M. also called 9-1-1 to report the discovery of hidden cameras at the rental property. The call was transferred to the Hatillo Police Station.

3.15   G.P.M. informed the officers that they had found hidden cameras in the Airbnb they were renting. The officers requested the address and advised the Plaintiffs that a patrol car would be dispatched to the property.

3.16   After waiting approximately thirty (30) minutes without any police response, G.P.M. decided to drive to the Hatillo Police Station, where Officer Ángel Vázquez (hereinafter "Officer Vázquez") took her statement.

3.17   G.P.M. then returned to the Airbnb, where two (2) police officers were waiting. The officers were shown the locations of the hidden cameras. They took statements from the Plaintiffs, and pictures from the devices which were still in place. The officers did not occupy or remove the devices at the moment. Officer Vázquez informed them that a formal investigation would follow.

3.18   A few minutes later, G.P.M. heard voices coming from the bottom unit of the property. She went downstairs and encountered other guests, to whom she explained the situation. The female guest then asked E.R.R. to inspect her unit for hidden cameras. Upon inspection, they discovered two (2) hidden cameras in the bottom unit.

3.19 After the officers departed, E.R.R. received a call from the Airbnb platform offering the Plaintiffs an alternative rental property nearby. After some deliberation, the Plaintiffs agreed to visit the new property to inspect it for hidden cameras before deciding whether to stay.

3.20 Upon arriving at the new rental, E.R.R. began researching hidden cameras and learned that many such devices contain memory cards that store the footage they capture.

3.21 Since they still had access to the Airbnb Apartment, the Plaintiffs decided to return to check whether the hidden cameras contained memory cards.

3.22 Once at the Defendant's property, the Plaintiffs removed the outlets containing the hidden cameras and discovered three (3) memory cards—one for each camera. However, while removing the third outlet, a blue light turned on at the back of the black box, which Plaintiffs concluded that the device was actively connected or being accessed remotely. Once the Plaintiffs removed the three memory cards and went to the second apartment provided by Airbnb to stay the night.

3.23 On the following day, February 21, 2025, the Plaintiffs obtained a computer to review the contents of the memory cards. They began examining the cards one by one. Upon opening the files, they discovered thousands of listed and archived video and audio recordings, each labeled by the date it was created.

3.24 The Plaintiffs examined the dates they had been staying at the property. As the file opened, they saw themselves during their stay, they saw their children images, naked or on various stages of undress. G.P.M. and E.RR. saw themselves during their stay, which included them having sexual relations. The sheer fear, emotional distress, rage, and profound sorrow—and the deep sense of violation experienced by the Plaintiffs, both personally and on behalf of their children—were unfathomable.

3.25 G.P.M. searched for the oldest available file to determine whether any recordings existed from the time the cameras were installed. To her indescribable horror, she discovered a video showing Medina himself in the master bedroom installing and adjusting the camera lens of the hidden camera (Exhibit 1 – Video Snapshot dated February 1, 2024, at 22:09:34), holding a second camera device (Exhibit 2 – Video

Snapshot dated February 1, 2024, at 22:11:20), and later confirming the live feed on his cellphone while verifying the camera's angle and viewpoint (Exhibit 3 – Video Snapshot dated February 1, 2024, at 22:13:17).

3.26    Meanwhile, E.R.R. called Officer Vázquez to inform him of their findings. A few minutes later, Officer Vázquez returned the call and instructed E.R.R. to meet him back at the Airbnb Apartment in Hatillo, as they were preparing to search the property.

3.27    Upon arriving at the Airbnb Apartment, the Plaintiffs met with Officer Vázquez and several other officers. Together, they waited for a judge to issue the search warrant. After waiting several hours, Officer Vázquez left for the Arecibo Courthouse to expedite the search warrant process.

3.28    A short time later, a neighbor from the Airbnb Apartment signaled to G.P.R. that he had just seen defendant Medina driving past the main road. He further stated that he had known Medina for years and recognized the vehicles he owned.

3.29    Approximately two minutes later, defendant Medina drove past the property again, in a white van.

3.30    While E.R.R. and G.P.M. awaited for the warrant near the neighbor's house, approximately an hour later, the woman renting the bottom unit of the Airbnb Apartment called G.P.M. to inform her that two men had entered the Airbnb Apartment upstairs unit through the alternate entrance facing the neighborhood.

3.31    Upon information and belief, Defendant Medina and defendant Rodríguez arrived at the Airbnb Apartment to remove the hidden cameras installed throughout the apartment, assisted by an unknown woman with a laptop in hand. Defendant Rodríguez, was aware of the existence of the hidden cameras, as was the unknown woman. Both,

9

defendant Rodríguez and the unknown woman, assisted co-defendant Medina in his wrongful conduct.

3.32    Upon learning that both defendants, Medina and Rodríguez, had entered the premises, G.P.M. immediately notified an officer stationed in a patrol car outside. Upon hearing this, E.R.R. ran into the upstairs unit and physically confronted Medina, dragging him out. The officer intervened and separated them. While the officer remained with Medina, E.R.R. followed defendant Rodríguez who had also entered the unit, confronted him, and engaged in a heated exchange. G.P.M. stayed away from the confrontation. Shortly thereafter, the unknown woman with a laptop emerged from a car and joined the discussion between E.R.R. and co-defendant Rodríguez.

3.33    G.P.M. urged E.R.R. to step away, which he did. The co-defendants eventually left the scene in separate vehicles.

3.34    An hour passed, and Officer Vázquez had still not returned. G.P.M. called to ask whether they could leave the premises. At that moment, the neighbor informed the Plaintiffs that his security cameras had recorded Medina and Rodríguez instructing the woman who had accompanied them to act as a lookout while they approached the property from a side area not visible to police officers.

3.35    The Plaintiffs were eventually allowed to leave the premises.

3.36    Later that night, Officer Vázquez called G.P.M. to inform her that the police had conducted the search of the property and asked both G.P.M. and E.R.R. to visit the station to turn in the memory cards as evidence.

3.37    A few hours later, the Plaintiffs went to the Hatillo police station and handed the three (3) memory cards to Officer Vázquez, who issued a receipt and informed them that a sergeant from the I.C.E. division would be picking up the memory cards.

3.38    On February 22, 2025, the Plaintiffs were summoned to the Prosecutor's Office in Arecibo to provide testimony regarding the events that had occurred at the Airbnb rental property.

3.39    After leaving the Prosecutor's Office, the Plaintiffs went to a nearby restaurant. Shortly after arriving, G.P.M. went to use the restroom but experienced her first panic attack of more to come. Overcome by the feeling of being watched, she was unable to use the restroom, and the Plaintiffs left the restaurant soon after.

3.40    That same afternoon, the neighbor from the Airbnb Apartment shared a video to Plaintiffs from his security cameras showing Medina parked across the main road from the Airbnb in the same white van around 6:00 a.m. He is seen entering the property, remaining for a while, and then leaving.

3.41    Later that day, G.P.M. received a call from the woman renting the downstairs unit. She reported finding a memory card hidden inside one of the electrical outlets in her unit.

3.42    As a result of the trauma, E.R.R. decided to postpone their return flight by a week, as the events had completely disrupted their vacation.

3.43    That night, G.P.M. began experiencing vivid nightmares in which she and her children were being watched. Neither Plaintiff was able to sleep.

3.44    The following day, G.P.M. noticed that their 9-year-old daughter was withdrawn, avoiding spending time with the family.

3.45    Later that week, the Plaintiffs visited the Arecibo Courthouse to file a restraining order against defendant Medina, fearing that he posed a continued threat to them and their family.

3.46    During that same week, the Plaintiffs received a call from Officer Pérez of the Sexual Crimes Division at the Arecibo Police Headquarters, who summoned them to provide further testimony about the events.

3.47    While attempting to recover some peace during the remainder of their stay, G.P.M.'s sister informed her that reporters had learned about the incident and were attempting to contact G.P.M. through her, with repeated phone calls.

3.48    Deeply affected by the events, Plaintiffs were unable to sleep due to recurring nightmares and lived in constant fear during the day—a condition that has persisted to the present. They left their accommodation only when absolutely necessary during the remainder of their stay. G.P.M. concentrated on providing emotional support to their daughter, who confided that she was feeling unwell and believed she was falling into a state of depression as a result of the ordeal.

3.49    Upon returning to the United States, the family continued to suffer from severe emotional distress and the damages caused by these events. G.P.M. sought out a Spanish-speaking psychologist, and the family has remained in therapy to this day.

## IV. FIRST CAUSE OF ACTION:
### Federal Wiretapping Act's Violation

4.1    Plaintiffs repeat and reassert by reference each and every allegation contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

4.2     The Federal Wiretapping Act, 18 U.S.C. § 2511 et seq, provides that it is unlawful for "any person" to "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication". 18 U.S.C.A. 2511(a). Section 2520 states that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation." 18 U.S.C. § 2520.

4.3     Codefendant Medina's intentional, malicious, and negligent invasion of Plaintiffs' privacy—through the unauthorized use of video and audio recordings, including live surveillance—constitutes a clear violation of the applicable provisions of the Federal Wiretap Act (FWA). As a direct result of Codefendant Medina's willful and negligent conduct, Plaintiffs have endured profound and enduring mental anguish. Moreover, codefendant Airbnb breached its duty of care to provide safe accommodations free from unlawful life video and audio recordings, failed also to disclose the existence of any such video and audio recording devices within the property. Accordingly, Airbnb is jointly and severally liable for the resulting harm.

4.4     Plaintiffs' emotional distress and moral damages, while ultimately to be determined by a jury, are conservatively estimated at no less than five million dollars ($5,000,000.00).

## V.     SECOND CAUSE OF ACTION
### (NEGLIGENCE)

5.1 Plaintiffs repeat and reassert by reference each and every allegation contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

5.2 Puerto Rico's general tort statute, Article 1536 of the Puerto Rico Civil Code of 2020, dictates that "any person who, through fault or negligence, causes damage to another, is obliged to repair it." 4 PR Laws Ann. tit. 31 § 10801. A successful tort action under Article 1536 requires the plaintiff to prove: (1) evidence of a physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause). Article 1536 typically defines "fault" as an action "'committed knowingly and willfully'" or as "'simply . . . an act willful or not, of a person which produces a wrong or damage.'"[2] Negligence, however, is "defined as 'the failure to exercise due diligence to avoid foreseeable risks.'" *Blomquist v. Horned Dorset Primavera, Inc.*, 925 F.3d 541, 546-47 (1st Cir. 2019).

5.3 In Puerto Rico, the right to privacy can be asserted against private individuals, and state action is not a prerequisite. Article II, sect. 8 PR Constitution, *See Arroyo v. Rattan Specialties, Inc.*, 1986 PR Sup. LEXIS 88, 117 PR Dec. 35, 87 (1986).

5.4 At all times, Plaintiffs were occupants and tenants of the property from February 17, 2025, through February 20, 2025, and had a reasonable expectation of privacy during their stay.

---

[2] *Quiles v. United States*, Civil No. 19-1207 (MEL), 2021 U.S. Dist. LEXIS 232164, 2021 WL 5762950, at *9 (D.P.R. Dec. 3, 2021) (citing Reyes v. Heirs of Sánchez Soto, 98 D.P.R. 305, 310 (1970)).

5.5     During that stay, Medina, with the assistance of codefendant Rodríguez Cordeo, electronically intruded upon Plaintiffs private quarters and video and/or audio recorded such intrusion.

5.6     Such intrusion occurred throughout the rental property, including the master bedroom and two (2) bathrooms, thereby intruded on private and intimate interactions between G.P.M. and E.R.R, and their minor children.

5.7     As a direct consequence of the Medina's and Rodríguez's intrusion and Airbnb's negligence, the Defendants jointly and severally caused severe emotional damages to the Plaintiffs as well as their children, and for them to suffer distress, fear, anxiety and sadness due to the situation they faced in the Defendant's rental property.

5.8     These losses are either permanent or continuing in nature and the Plaintiffs will suffer them in the future.

5.9     Plaintiffs are entitled to receive as full, just and fair compensation for the aforementioned damages suffered a reasonable sum of no less than $5,000,000.00.

## VI. THIRD CAUSE OF ACTION
### Negligence Claim against Airbnb

*Qui sentit commodum, sentire debet et onus*
(he who derives a benefit ought also to bear the burden)

6.1     Plaintiffs repeat and reassert by reference each and every allegation contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

6.2     Airbnb agreed that, by and through its web-based platform, Airbnb would rent out the Codefendant Medina's property out to third parties on his behalf.

6.3     Therefore, Airbnb acted as operator, manager, or entity in full or joint control of leasing the property and/or acted as the Codefendant's agent.

6.4     As such, Airbnb stood in the Codefendant Medina's shoes as the lessor of the property and had a responsibility to provide the Plaintiffs and any invitee a property that was free of electronic devices capable of recording visual images and/or audio, as well as physical impressions of G.P.M. and E.R.R. engaging in private, personal or familial activity.

6.5     By failing to ensure that the codefendant's property did not contain electronic devices capable of capturing visual images and/or audio recordings of the Plaintiffs, Airbnb tacitly allowed the Codefendants, Medina and Rodríguez, to violate the Plaintiffs privacy.

6.6     Airbnb violated the Plaintiffs rights by failing to warn of past invasion of privacy known to have occurred at other Airbnb properties prior to the subject incidents.

6.7     Airbnb violated the Plaintiffs rights by failing to disclose to the Plaintiffs the presence in the property of electronic devices capable of observing and/or capturing visual images and/or audio recordings of them engaging in private, personal or familial activity.

6.8     Plaintiffs have pleaded a prima facie case of negligent infliction of emotional distress by pleading that Airbnb is a manager of the Airbnb Apartment that "leases, offers to lease, places for rent, solicits listing for places for rent, solicits prospective tenants and/or collect rent from real property in exchange for financial remuneration"; that breached its duty to Plaintiff by conducting "no or an inadequate background investigation of the owners of the Airbnb Apartment, and engaged in no reasonable or an inadequate

investigation and vetting of the Airbnb Apartment" and by failing to remove the concealed camera in the private bathrooms before it could record Plaintiffs.

6.9   Airbnb's failure to investigate and uncover the concealed camera constitutes harm against Plaintiffs.

6.10   These losses are either permanent or continuing in nature and the Plaintiffs will suffer them in the future.

6.11   As a direct consequence of the Medina's intrusion and Airbnb's negligence, the Defendants jointly and severally caused severe emotional damages to the Plaintiffs as well as their children, and for them to suffer distress, fear, anxiety and sadness due to the situation they faced in the Defendant's rental property.  Plaintiffs are entitled to receive as full, just and fair compensation for the aforementioned damages suffered a reasonable sum of no less than $5,000,000.00.

## VII. FOURTH CAUSE OF ACTION
### Punitive Damages

7.1   Plaintiffs repeat and reassert by reference each and every allegation contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

7.2    The Puerto Rico Civil Code of 2020 Article 1538 established the imposition of punitive damages in actions for tort. See 31 P.R. Laws Ann. § 10803 ("[W]henever the act or omission constitutes a crime, is committed intentionally or with serious disregard for the life, safety, and property of others, the judge [or jury] may impose additional compensation that shall not be greater than the amount of damage caused."). See also Rodríguez-Pérez v. Abreu-García, 2024 U.S. Dist. LEXIS 35777, 2024 WL 808654, at *6

(D.P.R. Feb. 27, 2024) (the Puerto Rico Civil Code of 2020 states that, upon making the requisite showing, plaintiffs are entitled to punitive damages).

7.3   Plaintiffs are entitled to receive punitive damages compensation in a sum of no less than $5,000,000.00, and defendants are jointly and severally liable.

## VIII. FIFTH CAUSE OF ACTION:
### (Supplemental Jurisdiction)
### (PR Civil Code, Art. 1536)

8.1   Plaintiffs repeat and reassert by reference each and every allegation contained in the preceding paragraphs and incorporate the same herein as though fully set forth.

8.2   Pursuant to 28 U.S.C.A. §1367, a federal court may exercise supplemental jurisdiction over state law claim when it's joined with a federal claim and both arise from a common nucleus of operative fact as alleged herein.

8.3   Pursuant to Article 58 of the Puerto Rico Civil Code, non-contractual obligations are governed, with respect to rules of conduct and safety, including those concerning punitive damages, by the law of the place where the damaged occurred.

8.4   As set forth above, Defendants, without legal justification and intentionally, engaged in a course of conduct that violated Plaintiff's right to privacy, by installing electronic devices capable of observing and/or capturing visual images and/or audio recordings throughout the Airbnb Apartment.

8.5   As a direct consequence of the Defendant's intrusion, the Defendants caused severe emotional damages to the Plaintiffs as well as their children, and for them

to suffer distress, fear, anxiety and sadness due to the situation they faced in the Defendant's rental property.

8.6  Defendant's actions constituted an unlawful intrusion into Plaintiff's private life and violated Plaintiff's right to seclusion, dignity, and privacy under the Puerto Rico Constitution and Civil Code.

8.7  The Supreme Court of Puerto Rico has recognized that the recording of a person's naked image without their consent, while in private quarters, constitutes an unreasonable intrusion into their privacy and dignity. The naked image a person is one of the most sacred aspects of bodily intimacy.

8.8  Pursuant to Article 1536 of the Puerto Rico Civil Code, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, as well as punitive damages to the extent permitted by law.

8.9  Given the privileged nature and preeminence of the right to privacy under Puerto Rico law, the Supreme Court of Puerto Rico has recognized that the protection of private matters operates *ex propio vigore,* meaning it doesn't require enabling legislation to be enforceable, therefore it may be invoked directly between private individuals. Moreover, any violation of the constitutional right to privacy may be asserted either through injunctive relief or a civil action for damages, based on the general duty to respect the private or family of other human beings.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully pray that this Honorable Court enter judgment in favor of Plaintiffs and, jointly and severally, against Defendants:

a.  Granting Plaintiffs all the sums requested in the Complaint;

b. Imposing upon Defendants the payment of all costs and expenses to be incurred in this lawsuit;

c. Granting Plaintiffs any other relief that they may be entitled as a matter of law; and,

d. Awarding Punitive Damages,

e. Awarding Plaintiffs pre-judgment and post-judgment interest, plus a reasonable amount for attorney's fees.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing notice of appearance with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 24th day of June, 2025.

*/S/ José A. Morales Boscio*
Morales Boscio Law Offices PSC
USDC No. 220614
VIG Tower Suite 1500
Ave. Ponce de León 1225
Santurce, PR 00907-4980
Tel. 787.473.7778
E-Mail: jamb@mbprlaw.com